IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CRIMINAL NO. 06-40064-WDS |
| ) | |
| ERIC VENTERS, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM & ORDER**

**STIEHL, District Judge:**

This matter is before the Court on the defendant's motion to suppress evidence (Doc. 32), to which the government filed a response (Doc. 35). The Court held an evidentiary hearing on the motion and took the matter under advisement. The parties have now filed their post-hearing briefs (Docs. 39, 40) and the matter is ready for ruling.

**BACKGROUND**

Defendant is charged by the grand jury in a single count indictment with knowingly and intentionally possessing equipment, chemicals, products or materials which may be used and using these items to manufacture methamphetamine, a Schedule II Controlled Substance, all in violation of 21 U.S.C. § 843(a)(6). The defendant contends that the evidence seized in this case should be suppressed because the officers did not have a basis for entering the house without a warrant, and therefore violated his Fourth Amendment rights.

**FACTUAL SUMMARY**

The defendant was arrested after law enforcement officers escorted Illinois Department of Children and Family Services (DCFS) Child Protective Investigator, Vanessa Shaw, went to

the defendant's residence at 1004 South 24th Street, Mount Vernon, Illinois, on August 2, 2006, to investigate allegations of child neglect.  Shaw, a seven year employee of DCFS,  testified that she received a neglect report from the hotline about the defendant's home and the three minor children who lived in the home.[1]  The report indicated that the home was in a state of filth and that the three children were being neglected.   Shaw testified that in this case she asked for law enforcement to accompany her on this welfare check and that she generally asks for law enforcement accompaniment on welfare checks. Shaw discussed with Sergeant Ken McElroy, of the Mount Vernon Police Department, the allegations about child neglect, the poor environmental conditions and the alleged use and production of methamphetamine.

Before going to the defendant's home, Shaw contacted, by telephone, Sue Houseworth, who was the person who had made the hotline report.[2]  Houseworth is the stepmother of the defendant's wife, Natalie Venters.  Houseworth stated that Natalie had been in the hospital three or four days, that she had been at the defendant's house a week or so before and that the house was filthy, and had a terrible odor.  She indicated that the children are often filthy and that she believed that the defendant was using and cooking methamphetamine because she could smell the methamphetamine on the children's clothing.  She stated that she would be willing to care for

---

[1] Shaw testified that the process of a child abuse hotline call follows a specific procedure.  First, person calls the abuse line and the call is received in Springfield, Illinois.  At that time, a report is generated and forwarded to the field office in the area where the family resides.  The field office has 24 hours to attempt to contact the child or children.  In this case, the hotline report was received on August 2, 2006 at 9:34 A.M., and included assertions that the house was filthy: full of human and animal feces; and that the mother was currently hospitalized, possibly for contagious anthrax.  The report included a caution to DCFS to enter the house with masks, as the mother has Multiple Sclerosis and uses intravenous medications and may have contracted anthrax in that manner.  The report further indicated that the father manufactures, sells, and uses methamphetamine. (Suppression Hearing Transcript, April 16, 2007, pp. 7-8.)

[2] Although the name of the person making a report to the hotline is generally protected, the caller was identified for purposes of this hearing.

the children if they were removed from the home.

    Sgt. McElroy and Shaw then went to the hospital and spoke with Natalie Venters, the defendant's wife. She stated that she believed that the defendant was both using and making methamphetamine. She further stated that they were in the process of separating, and that the children would be living with her father and stepmother.

    Shaw and Sgt. McElroy then went to the defendant's home. Sgt. McElroy requested uniformed back up, and Officer Rodney Sweetin, of the Mount Vernon Police Department, met them at the defendant's home. Sgt. McElroy told Officer Sweetin that when they arrived at the home, they knocked loudly on the door but got no response. Through a window they saw a child peering at the door, but that child would not open the door. They thought the child could be injured or sick and also noticed the filthy conditions inside the house. This gave substance to the child neglect hotline report. At that point the officers decided to enter the house to check on the safety and welfare of the children. The door to the house was not locked. Sgt. McElroy opened the door and announced "Police" in a very loud voice. There was no response, and they decided to enter the home. Sgt. McElroy continued to announce that they were the police. They found the three nude children unattended in house filled with feces. One child was found on the couch, lying under a blanket. He was later identified as Sammy Venters, and was naked. Two other children were found on a mattress in the doorway of a bedroom. Although Sgt. McElroy shook them several times, and repeatedly said "Wake up," in an increasingly loud voice, they remained unresponsive. One of these children had a runny, bloody nose, another had a lice infested head with hair falling out. There was no adult present and all of the children were nude. The oldest child was unable to tell them where their father was, and said that the last time he had seen him

was during the day before the officers arrived at the home.

Officer Sweetin went to speak with a cable repair person who was outside the home. The cable man was asked if he had seen any adults and stated that he had not. Officer Sweetin noticed a shed at the back of the property which had an air conditioner running. He knocked on the door, but got no response. Officer Sweetin opened the door, which was not locked, because he was aware that the children had not seen their father for some time and was concerned that the father might be hurt or sick. When he opened the door, Officer Sweetin saw the defendant and Jason Reich sitting on chairs within the shed. The defendant moved his hands near the floor – they were obstructed by a coffee table. Officer Sweetin directed the defendant to put his hands in the air, which he did not do. Instead, the defendant continued to move his hands below the table out of sight of the officer. It was Officer Sweetin's belief that the defendant's actions represented an effort to hide or destroy contraband or to retrieve a weapon.

Officer Sweetin drew his service revolver and ordered the defendant to his feet. The defendant jumped out of his chair, headed towards the officer and yelled that the officer should "Get out." Officer Sweetin told the defendant to turn around and that he was under arrest, but the defendant did not comply with this order. He became even more excited, and headed for the rear door of the shed, saying that the officer should leave. Officer Sweetin again directed the defendant to stop, but he did not comply. The defendant attempted to remove a wood 2 x 4 which barred the rear door. Officer Sweetin holstered his weapon. The defendant managed to get the door open, but Officer Sweetin was able to stop and restrain him by using a taser.

At that point, Sgt. McElroy arrived at the rear of the shed and placed the defendant in handcuffs. Sgt. McElroy told the defendant that he was under arrest for child neglect and that

the children were being placed into protective custody.  Sgt. McElroy thereafter called an Assistant States Attorney in Jefferson County to obtain a search warrant.  Once the warrant for criminal endangerment of a child was obtained, Sgt. McElroy returned to the defendant's home and executed the warrant.  He noticed a bag with a leafy green substance on a table, and Det. Roger Hayse, who was there for the search warrant execution, noticed a baggie containing an off-white powdery substance on a shelf in the bathroom.  Also present in the bathroom were scales, typically used for measuring drugs.  There were several folded bills lying near the scales.  Sgt. McElroy then requested a Narcotics Unit to meet him at the defendant's residence.

Narcotics Detectives Koontz and Breeze arrived at the home and were shown the scales, the suspected drug items and decided to apply for an additional search warrant.  The assistant states attorney was contacted again and a second search warrant was sought and issued by the Court.  That search warrant resulted in the seizure of numerous items related to the manufacture of methamphetamine.

The defendant asserts that the report prepared by Officer Sweetin is in contradiction to his testimony at the hearing as to what occurred.  His report provides that he entered the house and then saw the child on the couch.  The defendant contends that the fact that the report does not provide that Sgt. McElroy saw a child through the window indicates that the search was not valid and was not based on probable cause.

## ANALYSIS

The defendant asserts that law enforcement was simply looking to make an arrest on the suspected drug activity, and was not there to investigate child neglect at all.  The Court simply cannot agree in light of the facts of this case.

It is well settled in this circuit, that a warrantless search of a defendant's home is presumptively unreasonable under the provisions of the Fourth Amendment, absent the existence of exigent circumstances, or other clearly delineated exceptions to the Fourth Amendment. *United States v. Lenoir,* 318 F.3d 725, 730 (7th Cir. 2003). "Warrantless searches are constitutionally permissible . . . where there is probable cause and exigent circumstances create a compelling need for official action an insufficient time to secure a warrant." *United States v. Andrews*, 442 F.3d 996, 1000 (7th Cir. 2006) (*citing United States v. Marhall*, 157 F.3d 477, 481-82 (7th Cir. 1998)).

"The government has the burden of proving that its officers had an objectively reasonable basis for believing such exigent circumstances existed at the time of the warrantless entry." 442 F.3d at 1000 (citation omitted). The Supreme Court has recognized that situations such as hot pursuit, a reasonable belief that evidence was about to be destroyed and fear of danger to the occupants of a home all constitute exigent circumstances. *Minnesota v. Olson*, 495 U.S. 91, 1000 (1990); *see also, Andrews*, 442 F.3d at 1000-01; *United States v. Jenkins*, 329 F.3d 579, 581 (7th Cir. 2003). The Seventh Circuit has stated that the court must "analyze the situation from the perspective of the officer at the scene." *Leaf v. Shelnutt*, 400 F.3d 1070, 1081 (7th Cir. 2005).

In this case, the government has established that the officers were at the defendant's home to investigate a report of child neglect and filthy living conditions, which, upon minimal investigation, i.e. looking through the front window picture window of the home, was substantiated. Although the defendant makes much of the fact that the officers had been advised before going to the home that there was a suspicion of drug activity, they all testified that their

reasons for being at the scene, for entering the home and for entering the shed were solely directed to the issue of the neglect of the children.  It is hard to imagine a situation worse than that which confronted the investigating officers and DCFS officer.  Unclothed, sluggish children living in a house full of excrement and filth is exactly the type of situation which rises to exigent circumstances.  Moreover, once the officers were able to communicate with the oldest child, they learned that the children had not seen the only adult, the defendant, for nearly a day.  It was completely reasonable for the officers to investigate the shed on the property to see if the defendant was inside that shed and possibly hurt or ill himself.  Although warrantless searches are suspect, in this case, the entry into the home and into the shed were fully warranted by the circumstances.

Therefore, the Court **FINDS** that the officers were warranted in entering the defendant's home and the shed on the defendant's property, and that their entry in each of these places was based on the existence of reasonable suspicion that the occupants of a home were in danger.  Once inside the home, the officers reasonably looked for the three children who were reported to be in the home, and for the adult, the defendant.  Once inside the home, and inside the shed the Court **FINDS** that the drug paraphernalia in both of these places was in plain view.  This, therefore, allowed the officers to reasonably seek search warrants for drugs and evidence of drug activity.  *United States v. Kempf*, 400 F.3d 501, 503 (7th Cir. 2005).

The Court **FURTHER FINDS** that the officers acted reasonably based on the existence of exigent circumstances, and therefore, the defendant's Fourth Amendment rights were not violated in this case. Accordingly, the Court **DENIES** defendant's motion to suppress on all grounds raised.

**IT IS SO ORDERED.**

**DATED: June 14, 2007.**

                                                    **s/ WILLIAM D. STIEHL**
                                                        **DISTRICT JUDGE**